UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Thomas Marshall**

    v.                                               Case No. 24-cv-00191-PB-AJ
                                                           Opinion No. 2025 DNH 067

**U.S. Attorney General,
et al.**

## MEMORANDUM AND ORDER

Thomas Marshall has filed a complaint seeking declaratory and injunctive relief against the United States, the Attorney General, the Director of the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and the Director of the Federal Bureau of Investigation (FBI). He asserts that the Second Amendment bars the defendants from using 18 U.S.C. § 922(g)(1), the federal felon-in-possession ban, to prevent him from possessing firearms based solely on his convictions for operating a motor vehicle while under the influence (OUI). Because I conclude that Marshall's claim is precluded by First Circuit precedent, I grant the defendants' motion to dismiss for failure to state a claim.

### I.    BACKGROUND

Marshall has two Massachusetts convictions for OUI: a 1997 first-offense conviction, Doc. 1-1, and a 2005 second-offense conviction, Doc. 1-2. Both OUI offenses are classified as misdemeanors under Massachusetts law

even though they carry maximum prison sentences of two-and-a-half years.[1] Mass. Gen. L. ch. 90, § 24.

Marshall moved to New Hampshire in 2023 and later applied to purchase a firearm at a licensed retailer. Doc. 1 at 7-8. While performing a background check on Marshall, the New Hampshire State Police conducted a routine background investigation and learned of Marshall's OUI convictions. Accordingly, it denied his application because he is barred from possessing a firearm by § 922(g)(1). Doc. 1-4.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads

---

[1]   Massachusetts law distinguishes between first-offense OUI and second-offense OUI convictions. See Mass. Gen. L. ch. 90, § 24. First offenses are punishable by a fine, a term of imprisonment no longer than two-and-a-half years, or both. Second offenses are punishable by a minimum fine of $600 and a term of imprisonment lasting no less than sixty days but no more than two-and-a-half years. Id. In Massachusetts, felonies are crimes subject to either capital punishment or a term of imprisonment served in a state prison. See id. ch. 274, § 1. First- and second-time OUI offenders serve their sentences in state "houses of correction," rather than in state prisons. Id. ch. 90, § 24. As such, both relevant offenses here are misdemeanors under state law.

"factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

Where, as here, the alleged facts are not in dispute, "[a] suit will be dismissed if the complaint does not set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." United States ex rel. Hutcheson v. Blackstone Med., Inc., 647 F.3d 377, 384 (1st Cir. 2011) (internal quotation marks and citation omitted).

### III. ANALYSIS

Before turning to defendants' arguments for dismissal, I first explain how § 922(g)(1) affects Marshall's firearm rights. I then describe the Supreme Court's recent Second Amendment jurisprudence, the circuit split that has developed over how to apply those precedents, and our own circuit's rulings addressing Second Amendment challenges to § 922(g)(1).

#### A. Section 922(g)(1)

Section 922(g)(1) makes it unlawful for any person who has been convicted of "a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. 18 U.S.C. § 922(g)(1). Although § 922(g)(1) is commonly referred to as the felon-in-possession law, it also applies to persons with misdemeanor convictions that carry maximum sentences of more than two years. See id. § 921(a)(20)(B) (defining "crimes punishable by a term of

imprisonment exceeding one year" to exclude a misdemeanor conviction only if the maximum sentence is two years or less). Marshall is subject to § 922(g)(1) because his OUI convictions carry maximum sentences of more than two years.

Federal law gives a person two ways to regain his firearm rights following a qualifying conviction. Section 921(a)(20) provides:

> Any conviction which has been expunged, or set aside or for which a person has been pardoned or has had civil rights restored shall not be considered a conviction for purposes of this chapter, unless such pardon, expungement, or restoration of civil rights expressly provides that the person may not ship, transport, possess, or receive firearms.

Id. Section 925(c) also authorizes the United States Attorney General to restore a person's firearm rights

> if it is established to [her] satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest.

Id. § 925(c). Marshall asserts that neither § 921(a)(20) nor § 925(c) currently provides him with a viable path to recover his firearm rights. Doc. 1 at 7, 13.

**B.    The Second Amendment**

The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In 2008, the

4

Supreme Court construed the Second Amendment to confer an individual right to bear arms. District of Columbia v. Heller, 554 U.S. 570, 592.

1. Supreme Court Precedent

The Supreme Court based its conclusion in Heller on a careful analysis of the text of the Second Amendment, its historical background, and contemporaneous understandings of constitutional language. Id. at 576-619. But in announcing this new interpretative method, the Court also cautioned—without grounding its statement in detailed historical analysis—that "nothing in [the] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." Id. at 626-27. At the same time, it characterized these types of firearm laws as "presumptively lawful." Id. at 627 n.26. Two years later, in a decision incorporating the Second Amendment against the states, the Court reiterated its "cast doubt" dictum. See McDonald v. City of Chicago, 561 U.S. 742, 786 (2010).

Since then, the Second Amendment landscape has evolved. In 2022, the Supreme Court handed down its opinion in New York State Rifle & Pistol Association v. Bruen, 597 U.S. 1 (2022). Bruen builds on Heller and specifies that, when the government seeks to regulate people or arms covered by the

5

plain text of the Amendment, it "must then justify its regulation by demonstrating that it is consistent with the nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24. To be sure, the Second Amendment "is neither a regulatory straightjacket nor a regulatory blank check." Id. at 30. Bruen thus requires the government to identify "a well-established and representative historical analogue" but it need not find a "historical twin." Id. (emphasis in original) "[E]ven if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." Id. The Bruen Court did not repudiate its earlier dicta in Heller and McDonald regarding certain longstanding regulations. Nor did it suggest how the analytical method it used to resolve Bruen could be employed when considering presumptively valid firearm restrictions such as felon-in-possession laws.

The Supreme Court clarified Bruen in United States v. Rahimi, 602 U.S. 680 (2024). There, the Court rejected a facial Second Amendment challenge to 18 U.S.C. § 922(g)(8), the statutory provision criminalizing the possession of a firearm by a person subject to a domestic violence restraining order. In rejecting a facial challenge, the Court emphasized that "[§] 922(g)(8) applies only once a court has found that the defendant 'represents a credible threat to the physical safety' of another." Id. at 699 (quoting § 922(g)(8)). But in making that observation, the Court also went out of its way, in an echo of

6

its earlier "cast doubt" dictum, to state: "We do not suggest that the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse." Id. at 698. And, at the same time, the Court restated its position in Heller that laws banning the possession of firearms by felons and the mentally ill are "presumptively lawful." Id. at 699 (internal quotation marks and citation omitted).

    2. The Circuit Split

Courts of appeal have struggled in attempting to apply Heller, Bruen, and Rahimi to challenges to § 922(g)(1). The Fourth, Eighth, Ninth, Tenth, and Eleventh Circuits have determined that neither Bruen nor Rahimi disturb the legality of § 922(g)(1)'s categorical ban on felons possessing firearms. See United States v. Hunt, 123 F.4th 697, 700 (4th Cir. 2024); United States v. Jackson, 110 F.4th 1120, 1125 (8th Cir. May 9, 2025); United States v. Duarte, No. 22-50048, 2025 WL 1352411, at *1, *4 (9th Cir. May, 9, 2025); Vincent v. Bondi, 127 F.4th 1263, 1265-66 (10th Cir. 2025); United States v. Cole, No. 24-10878, 2025 WL 339894, at *1, 3-4 (11th Cir. Jan. 30, 2025). Among these, all but the Eighth Circuit conclude that Bruen and Rahimi "support [prior circuit precedents] holding that § 922(g)(1) constitutionally prohibits the possession of firearms by felons." Duarte, 2025 WL 1352411, at *5; accord Hunt, 123 F.4th at 702; Vincent, 127 F.4th at

7

1265; Cole, 2025 WL 339894, at *3-4 (all citing pre-Bruen and Rahimi circuit precedents as good law). But see Jackson, 110 F.4th (upholding the facial validity of § 922(g)(1) without directly relying on pre-Bruen or Rahimi circuit precedent).

In contrast, only three circuits have read Bruen and Rahimi to require a departure from past circuit precedent rejecting Second Amendment challenges to § 922(g)(1). In United States v. Diaz, 116 F.4th 458 (5th Cir. 2024), the Fifth Circuit used what it understood to be the analytical method required by Bruen and Rahimi to reject the defendant's as-applied challenge to § 922(g)(1) because at least one of the defendant's qualifying convictions was for a charge that had been treated as a felony and was subject to severe punishment at the time of the nation's founding. Id. at 469-70. In United States v. Williams, 113 F.4th 637 (6th Cir. 2024), the Sixth Circuit concluded that Bruen and Rahimi require that a person subject to disarmament pursuant to § 922(g)(1) be "given an opportunity to make an individualized showing that he himself is not actually dangerous." Id. at 662-63. But because the defendant in Williams had been unable to prove that he was not dangerous, the court concluded that his challenge had been properly rejected by the district court. Id.

The Third Circuit is the only appellate court that has relied on Bruen and Rahimi to determine that the Second Amendment bars a person subject

8

to § 922(g)(1) from being disarmed. In Range v. Attorney General, 124 F.4th 218 (3rd Cir. 2024) (en banc) (Range II), that court held that the Second Amendment entitles a person subject to § 922(g)(1) to file a declaratory judgment action where the government must make a showing that the "our Republic has a longstanding history and tradition of depriving people like [the plaintiff] of their firearms." Id. at 232. Because the plaintiff's only felony conviction in Range II was for making a false statement to obtain food stamps, a nondangerous offense, the court determined that the Second Amendment barred the government from using § 922(g)(1) to disarm him. Id.

    3. The First Circuit

Our circuit addressed the constitutionality of § 922(g)(1) in the wake of Heller and McDonald but before Bruen and Rahimi in United States v. Torres-Rosario, 658 F.3d 110 (1st Cir. 2011). The panel began its analysis by rejecting a possible facial challenge to § 922(g)(1) based on the Supreme Court's statements in Heller and McDonald that neither opinion "cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons." Id. at 112-13 (internal quotation marks omitted). Because, however, both opinions also characterized felon-in-possession laws as only "presumptively lawful," the First Circuit recognized that the Supreme Court may have intended to leave open the possibility of future as-applied challenges based on "yet to be developed qualifications." Id. at 113. The court

9

then identified two types of potential as-applied challenges that the Supreme Court might recognize in the future. First, it suggested that "the Supreme Court may be open to claims that some felonies do not indicate potential violence and cannot be the basis for applying a categorical ban." Id. Second, it briefly considered the further possibility that the Supreme Court "might even be open to highly fact-specific objections." Id. The court did not expand on the latter possibility given that "such an approach, applied to countless variations in individual circumstances, would obviously present serious problems of administration, consistency and fair warning." Id. The court then summarily rejected the defendant's as-applied challenge to § 922(g)(1) without determining whether the Second Amendment requires an offense-by-offense analysis because the defendant's drug distribution convictions doomed his challenge even "assuming arguendo that the Supreme Court might find some felonies to be so tame and technical as to be insufficient to justify the ban."[2] Id.

---

[2]   In the wake of Bruen and Rahimi, the Seventh Circuit took a similar approach to the issue. See United States v. Gay, 98 F.4th 843, 846-47 (7th Cir. 2024). In United States v. Gay, the Seventh Circuit left the door open to future offense-based challenges to § 922(g)(1) but concluded that, even assuming such as-applied challenges were operable, "that assumption does not assist" a defendant who had twenty-two prior felony convictions, including aggravated battery of a peace officer and possession a weapon while in prison. Id.

The circuit's most recent consideration of a Second Amendment challenge to § 922(g)(1) followed the issuance of Bruen and Rahimi but reviewed the issue only for plain error because the defendant had not presented his Second Amendment argument to the district court. United States v. Langston, 110 F.4th 408 (1st Cir. 2024). After describing the analytical process used by the Supreme Court in Bruen and Rahimi, the court concluded that "the legal test from Rahimi does not 'compel' the conclusion that § 922(g)(1) is unconstitutional under the Second Amendment as applied to defendants with Langston's criminal history as charged in the indictment." Id. at 419. In reaching this conclusion, the court attached special weight to the Supreme Court's repetition in Rahimi of its dictum from Heller that felon-in-possession laws were "presumptively lawful." Id. at 420.

C. **Marshall's Argument**

Marshall argues that the analytical framework for evaluating Second Amendment claims set forth in Bruen and Rahimi requires that this Court sustain his as-applied challenge to § 922(g)(1).³ Defendants respond that

---

³ Although the government has not challenged Marshall's standing to sue, I have an independent obligation to ensure that Marshall's suit satisfies the requirements of Article III. Article III requires that a litigant allege facts sufficient to support injury in fact, redressability, and traceability in order to be heard in federal court. See Conservation L. Found., Inc. v. Acad. Express, LLC, 129 F.4th 78, 86 (1st Cir. 2025) (citing Spokeo Inc. v. Robins, 578 U.S. 330, 338 (2016)). Marshall frames his injury as his inability to purchase a

11

Marshall's challenge is foreclosed by the First Circuit's pre-Bruen decision in Torres-Rosario. I address these competing claims by first explaining why Torres-Rosario remains binding precedent. I then turn to Marshall's argument that the Second Amendment does not permit § 922(g)(1) to be used to disarm a person based solely on prior OUI convictions.

The Supreme Court made it clear that it was announcing a new analytical framework for evaluating Second Amendment claims in Bruen. As a general proposition, I recognize that inferior federal courts should adhere to both the holdings of the Supreme Court and the "mode of analysis" used by the court in reaching its decisions. See, e.g., Williams, 113 F.4th at 645 (revisiting Sixth Circuit precedent post-Bruen in light of the Supreme Court's new mode of analysis). But I am also mindful of the First Circuit's directive that "[u]ntil a court of appeals revokes a binding precedent, a district court

---

firearm at a licensed retailer in New Hampshire because his Massachusetts convictions caused him to fail a federally mandated background check. The background check process is the primary means through which the federal government keeps firearms out of the hands of people prohibited from possessing them under § 922(g). Seeking relief from this injury and arguing that the statute should not apply to him, Marshall asks this Court to enjoin the federal government from enforcing § 922(g)(1) and its derivative regulations against him. He also seeks declaratory relief under the Declaratory Judgment Act. Because the requested relief would redress Marshall's inability to obtain a firearm, I conclude that he has standing to bring this suit. See Range v. Att'y Gen., 53 F.4th 262, 269 n.7 (explaining why a litigant who attempted to purchase a firearm in a situation similar to Marshall's has standing under Article III).

within the circuit is hard put to ignore that precedent unless it has unmistakably been cast into disrepute by supervening authority." Eulitt v. Maine, Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004), abrogation on other grounds recognized by Carson v. Makin, 596 U.S. 767 (2022). Given the Supreme Court's repeated suggestions in Heller, McDonald, and Rahimi that Second Amendment challenges to felon-in-possession laws require different treatment than the laws at issue in those cases, it is not unmistakably clear that our circuit's precedents in this area have been cast into disrepute. Accordingly, I agree with the Fourth, Ninth, Tenth, and Eleventh Circuits that neither Bruen nor Rahimi provide a basis to disregard otherwise controlling circuit precedent rejecting Second Amendment challenges to § 922(g)(1).

Finally, even if I were to take the offense-by-offense approach and review the constitutionality of § 922(g)(1) as applied specifically to someone with Marshall's Massachusetts misdemeanor OUI convictions, the First Circuit's guidance in Torres-Rosario still charts a clear path to dismissal because OUI is not an offense that is "so tame and technical as to be insufficient to justify the [firearms possession] bar." Torres-Rosario, 658 F.3d at 113. Following the Supreme Court's lead in Rahimi, courts taking an offense-by-offense approach have looked at dangerousness as the relevant heuristic: "A person convicted of a crime is 'dangerous,' and can thus be

13

disarmed, if he has committed [. . .] a crime that inherently poses a significant threat of danger." Williams, 113 F.4th at 663. Were the First Circuit to require such an approach, the question here would be whether a second-offense OUI conviction is a crime that is dangerous enough to support disarmament.

An OUI second offense is, in and of itself, dangerous. Though Massachusetts classifies the conduct as a misdemeanor, it is nonetheless serious conduct of the type that places the misdemeanant in the category of people who "present a credible threat to the physical safety of others." See Rahimi, 602 U.S. at 700. A second-offense OUI conviction suggests not just a one-time mistake or blip but repeated disregard for the law and for the safety of others. In this instance, Marshall was convicted of OUIs in Massachusetts twice over the course of a decade. This ongoing reckless conduct is exactly the type that poses a serious threat to the community. As the Supreme Court has emphasized in its own opinions, "[d]runk driving is an extremely dangerous crime." Begay v. United States, 553 U.S. 137, 141 (2008), abrogated on other grounds by Johnson v. United States, 576 U.S. 591 (2015); accord Virginia v. Harris, 558 U.S. 978, 979-80 (2009) (Mem.) (Roberts, C.J., dissenting from denial of writ of certiorari) ("There is no question that drunk driving is a serious and potentially deadly crime.").

Though fatalities in motor vehicle traffic crashes involving alcohol-impaired drivers have been trending steadily downward since the 1980s, recent data from the federal Department of Transportation suggest that the dangers and risk are still significant. Compare Nat'l Highway Traffic Safety Admin., Traffic Safey Facts, 2022 Data [hereinafter "2022 Traffic Data"], with Nat'l Highway Traffic Safety Admin., Traffic Safety Facts 2004: A Compilation of Motor Vehicle Crash Data from the Fatality Analysis Reporting System and the General Estimates System, at 32 (including statistics from 1982 to 2004). In 2022, 13,524 traffic fatalities, or thirty-two percent of all fatalities, involved an alcohol-impaired driver. 2022 Traffic Data, at 6.

Repeated drunk driving is not akin to making a false statement on a food stamps application—the relatively tame and technical crime that the Third Circuit found could not constitutionally give rise to disarmament. See Range II, 124 F.4th at 231-32. Instead, repeated drunk driving is a serious offense that poses a significant risk of danger to the safety of others. The fact that states differ on how to penalize OUI offenders does not change the reality of its dangerousness. See Holloway v. Att'y Gen., 948 F.3d 164, 175-76 (3d Cir. 2020), abrogation recognized by Range II, 124 F.4th. "All three branches of the federal government have recognized" that repeated drunk driving creates serious and imminent dangers. Id. at 175 (citing Birchfield v.

15

North Dakota, 579 U.S. 438, 465-66 (2016), to summarize the actions taken by Congress and federal agencies, including the National Highway Traffic Safety Administration, to combat the dangers of drunk driving).

In addition, research shows that there is an increased danger associated with the use of firearms when alcohol is involved. See Doc. 7-1 at 33-35. The government in this case has marshaled significant evidence to support this conclusion: Peer-reviewed scientific studies have found that a significant percentage of homicides and suicides involve an acutely intoxicated perpetrator. See Charles C. Branas, Alcohol Use and Firearm Violence, 38 Epidemiologic Rev. 32, 36-37 (2016). In addition, at least one study has identified an increased likelihood of arrest for violent crimes among handgun purchasers with prior OUI-type convictions. See Rose M. C. Kagawa et al., Association of Prior Convictions for Driving Under the Influence with Risk of Subsequent Arrest for Violent Crimes Among Handgun Purchasers, 180 J. of Am. Med. Ass'n: Internal Med. 35, 38 (2019). This persuasive evidence underscores the dangers of allowing someone with multiple alcohol-related convictions access to firearms. Even taking the offense-by-offense approach entertained by the First Circuit in Torres-Rosario

as an eventual possibility, Marshall can be constitutionally disarmed because of his underlying OUI convictions.[4]

## IV. CONCLUSION

For the reasons explained above, I grant defendants' motion to dismiss. See Doc. 7. The clerk shall enter judgment in accordance with this memorandum and order and close the case.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

June 3, 2025

cc: Counsel of Record

---

[4] According to Marshall's complaint, his last OUI conviction occurred approximately 20 years ago. In explaining why OUI is a dangerous criminal offense, I do not mean to imply that Marshall remains a dangerous person under existing law, that is a judgment that is entrusted to the United States Attorney General by § 925(c).

17